Mark C. Holscher (SBN 139582)
mark.holscher@kirkland.com
Diana M. Torres (SBN 162284)
diana.torres@kirkland.com
Jiaxiao Zhang (SBN 317927)
jiaxiao.zhang@kirkland.com
**KIRKLAND & ELLIS LLP**
2049 Century Park East, Suite 3700
Los Angeles, California 90067
Telephone:  (310) 552-4200
Facsimile:   (310) 552-5900

Seth Alan Gold (SBN 163220)
Seth.Gold@btlaw.com
Jonathan J. Boustani (SBN 274748)
Jonathan.boustani@btlaw.com
Roya Rahmanpour (SBN 285076)
Roya.Rahmanpour@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067
Telephone:  (310) 284-3880
Facsimile:   (310) 284-3894

Attorneys for Plaintiffs
MURRAY COLIN CLARKE and BIOZEAL, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MURRAY COLIN CLARKE, an individual, and BIOZEAL, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>TNSG HEALTH CO., LTD., a United Kingdom Limited Company, MOM'S GARDEN COMPANY LIMITED, a Hong Kong corporation, MOM'S GARDEN GMBH, a German limited liability company, NATURE'S PRIME LLC, a Colorado limited liability company, ALPS HOLDING COMPANY LIMITED, a Seychelles limited company, NATURALIST, INC., a California corporation, TILIS COMPANY LIMITED, a Hong Kong corporation, WILD FOREST, INC., a California corporation, QIDONG LU, an individual, and ZHIJUAN GUO, an individual,<br><br>Defendants. | Case No.: 2:21-cv-03463-HDV-RAO<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>1-2  TRADEMARK COUNTERFEITING AND TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114;<br><br>3  FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(A);<br><br>4  COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION;<br><br>5  UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUS. AND PROF. CODE § 17200 ET SEQ.;<br><br>6-7  CANCELLATION OF U.S. TRADEMARK REG. NOS. 5957363 AND 6030381 [15 U.S.C. § 1119]<br><br>[DEMAND FOR JURY TRIAL] |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TNSG HEALTH CO., LTD., a
United Kingdom Limited Company,
                 Counterclaimant,

v.

MURRAY COLIN CLARKE, an
individual, and BIOZEAL, LLC, a
Delaware limited liability company,
                 Counter-Defendants.

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs Murray Colin Clarke and Biozeal, LLC ("Plaintiffs"), for their First Amended Complaint against Defendants Qidong Lu, Zhijuan Guo, TNSG Health Co. Ltd., Mom's Garden Company Limited, Mom's Garden GmbH, Alps Holding Company Limited, Nature's Prime, LLC, Naturalist, Inc., Tilis Company Limited, and Wild Forest, Inc. (collectively, "Defendants") allege and state as follows:

## NATURE OF ACTION AND SUBJECT MATTER JURISDICTION

1.     Plaintiffs have formulated and have been selling well-recognized and reputable supplements for children under the registered trademarks CHILDLIFE, NUTRITION FOR KIDS!, CHILDLIFE ESSENTIALS, and other trademarks for approximately two decades. Defendants TNSG Health Co., Ltd. ("TNSG Health"), Alps Holding Company Limited ("Alps Holding") and their principals, Ms. Zhijuan Guo and Mr. Qidong Lu, have recently embarked on a scheme to counterfeit and infringe Plaintiffs' registered trademarks, products, and names in order to sell nutritional supplements in competition with Plaintiffs. Defendants TNSG Health, Alps Holding, Ms. Z. Guo and Mr. Lu have engaged in such conduct within a single enterprise that comprises all Defendants, who are alter egos of each other and/or are each other's agents.  Plaintiffs therefore bring this action against all Defendants pursuant to 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), 15 U.S.C. § 1119, California common law, and California Business and Professions Code § 17200 *et seq*. This Court has jurisdiction over the subject matter of this case pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, § 1338(a), and § 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## PARTIES

2.     Plaintiff Dr. Murray Colin Clarke, D. Hom., L. Ac. ("Dr. Clarke") is an individual residing in Los Angeles County, California.

3.     Plaintiff Biozeal, LLC ("Biozeal") is a limited liability company duly organized and existing under the laws of Delaware, having a principal place of business in El Segundo, California.

4.     On information and belief, Qidong Lu ("Lu") is an individual residing in

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

China.

5.     On information and belief, Zhijuan Guo ("Z. Guo") is an individual residing in China with an address in Pomona, California.

6.     On information and belief, Defendant Z. Guo and Defendant Lu use as their agents Defendants Mom's Garden Company Limited and Mom's Garden GmbH (collectively, "Mom's Garden") to operate their counterfeit and infringing nutritional supplements business, including through each of the other entity Defendants. The Defendants are intertwined as, for example, the employees of Mom's Garden perform the work for each of the other entity Defendants, under the direction of Z. Guo and Lu, who direct payments indiscriminately to one entity or another. Such intertwined companies operated, owned, directed and/or controlled as a single enterprise by Defendants Z. Guo and Lu include the following:

A.     Defendant TNSG Health Co., Ltd ("TNSG Health"), is a limited company of Great Britain, which claims to have a place of business in London, United Kingdom. TNSG Health also has listed an address in El Segundo, California as the address for at least one of the products it sells in competition with Plaintiff. Defendant Z. Guo is TNSG Health's nominal sole owner, director, and officer. Defendant Lu is TNSG Health's agent and has referred to himself as "the boss." TNSG Health claims to have no employees but only an "outside business manager" named Liqin Song. Liqin Song, however, is the head or a key member of the Legal Department of TNSG Health. TNSG Health's business operations are actively controlled by Z. Guo and Lu through individuals nominally employed by Defendants Mom's Garden GmbH and Mom's Garden Company, Ltd. ("Mom's Garden"), including Liqin Song, who does business using a moms-garden.com domain name and email addresses, and TNSG Health has access to and stores its electronic documents on servers owned, controlled, and in the possession of Mom's Garden. The law firm of Venable LLP, which has

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

represented certain other Defendants in various matters, has represented TNSG Health from approximately late July or early August, 2022 through the date of this First Amended Complaint. Many of TNSG Health's United States trademark applications, including the Chinese character, VITASPA, and iFLEX trademarks at issue in this action, were filed and prosecuted by Timothy Wang of the law firm Ni, Wang & Massand PLLC.

B.      On information and belief, Alps Holding Company Limited ("Alps Holding") is a Seychelles limited company with an address at Second Floor, The Quadrant, Manglier Street, P.O. Box 334, Victoria, Mahe, Seychelles. Alps Holding claims to be the owner of the trademarks IRONBABY and iCAN, as those trademarks are reflected in United States Trademark Registration Nos. 6049644 and 6081859, respectively. Defendant Z. Guo is the Director and President of Alps Holding. Liqin Song claims to be the "Legal Manager" for Alps Holding. The law firm of Venable LLP represents Alps Holding. Many of Alps Holding's United States trademark applications, including for the iCAN and IRONBABY trademarks at issue in this action, were filed and prosecuted by Timothy Wang of the law firm Ni, Wang & Massand PLLC. Mr. Wang was also the attorney who filed and prosecuted many of the trademark applications of TNSG Health, including those at issue in this action. After Defendant TNSG Health represented to the Court that it had abandoned or would soon abandon its trademark registrations, Alps Holding applied to register many of those same trademarks, including iFLEX and VITA SPA.

C.      On information and belief, Mom's Garden Company Limited is a Hong Kong corporation with its principal place of business at 255-257 Gloucester Road, Causeway Bay, Hong Kong. The Mom's Garden entities claim to be "a nutritional supplement company" that distributes the brand INNE. On information and belief, defendant Lu Qidong owns and controls

Mom's Garden and Z. Guo has been or was a director of Mom's Garden. On information and belief, Liqin Song is an employee of Mom's Garden and uses a moms-garden.com email address. The law firm of Venable LLP represents individuals who are independent contractors for Mom's Garden and, on information and belief, is compensated for such services by Mom's Garden. On information and belief, in connection with its representation of TNSG Health in this action, the law firm of Venable LLP has facilitated the production of documents from a Mom's Garden server.

D.     On information and belief, Mom's Garden GmbH is a German limited liability company with an address at Hagenauer Str. 59, Wiesbaden 65203 Germany. Mom's Garden GmbH promotes its business on the website located at www.moms-garden.com. On information and belief, Z. Guo is a director of Mom's Garden GmbH and Mom's Garden GmbH is the licensee of trademarks that are or were owned by TNSG Health.

E.     On information and belief, Nature's Prime LLC ("Nature's Prime") is a Colorado limited liability company with its principal place of business at 9123 E Mississippi Ave, #6-202, Denver, Colorado, 80247. Nature's Prime claims to be the owner of the trademark MOM'S GARDEN, as that trademark is reflected in United States Trademark Registration No. 5762697. On information and belief, Nature's Prime falsely claims to have been formed by NOLO, an unrelated provider of do-it-yourself legal documents, whose address used to be 950 Parker St, Berkeley, California 94710, but Nature's Prime was in fact formed by, and is owned and controlled by, Lu and Z. Guo and operated as part of a single enterprise by and through the other Defendants as agents/alter egos. Defendant Lu is a Director of Nature's Prime and on October 17, 2018 Lu provided sworn testimony to the United States Patent and Trademark Office that the trademark MOM'S GARDEN was being used in United States commerce. Liqin Song claims to

6

be the "IP Manager" for Nature's Prime. Nature's Prime claims to be the owner of International Trademark Registration No. 1503146 for MOM'S GARDEN in many countries. On information and belief, Defendant TNSG Health has access to Nature's Prime's documents.

F.      On information and belief, Naturalist, Inc. ("Naturalist") is a California corporation with its principal place of business at 300 S Park Avenue, #808, Pomona, California 91766. Z. Guo is Naturalist's sole Director and is Naturalist's Chief Executive Officer, Secretary, and Chief Financial Officer. On information and belief, Naturalist is owned and controlled by Z. Guo and Lu and operated as part of a single enterprise with the other Defendants.

G.      On information and belief, Wild Forest, Inc. ("Wild Forest") is a California corporation with a principal place of business at 300 S Park Avenue, #808, Pomona, California 91766, which is the same principal place of business as Naturalist. Z. Guo occupies the same positions with Wild Forest as she occupies with Naturalist: she is Wild Forest's sole Director and Chief Executive Officer, Secretary, and Chief Financial Officer. On information and belief, Naturalist is owned and controlled by Z. Guo and Lu and operated as part of a single enterprise with the other Defendants. Alps Holding, for which Z. Guo is a Director, filed an application for trademark registration for WILD FOREST (U.S. Serial No. 97613910) after TNSG Health—also solely owned by Z. Guo—surrendered its trademark registration for WILD FOREST (U.S. Registration No. 5957623).

H.      On information and belief, Tilis Company Limited ("Tilis") is a Hong Kong corporation with a principal place of business and registered office at Suite 02, 3/F Sino Plaza, 255-257 Gloucester Road, Causeway Bay, Hong Kong. Defendant Z. Guo is Tilis' Director. On information and belief, Tilis is owned by Alps Holding and controlled by Defendants Z. Guo and Lu and

7

operated as part of a single enterprise by and through the other Defendants as agents/alter egos.

7.    Each of the Defendants is engaged in a common enterprise and business, and each acts as an agent on behalf of the others.  On information and belief, the corporate Defendants share directors, officers, employees, consultants, and office space, as well as common ownership, without regard to corporate formalities, and are controlled by Z. Guo and Lu.  On information and belief, the Defendants are alter egos of each other, and are characterized by a unity of interest in ownership and control among themselves such that any individuality and separateness between them have ceased, are mere shell instrumentalities and conduits through which Defendants carried on their business by use of each other's names, completely controlled, dominated, managed, and operated each other's business to such an extent that any individuality or separateness of the Defendants does not and did not exist, failed to observe corporate formalities, and intermingled the assets of each other, and other entities affiliated with them, to suit the convenience of themselves and in order to evade legal obligations and liability.  Given the manner in which they operate, it would be inequitable to allow the corporate veils to stand.

## PERSONAL JURISDICTION AND VENUE

8.    Plaintiffs are informed and believe, and on that basis allege, that this Court has personal jurisdiction over the Defendants as TNSG Health has listed an address in El Segundo, California as a place where its counterfeit and infringing products originate, which address is within the boundaries of the Central District of California. Defendant Naturalist, Inc. is a California corporation located in Pomona, California, within the boundaries of this District.  Mom's Garden Company Limited has two consultants in the United States, both within this District, and, on information and belief, uses the address of one such consultant, which is in within the boundaries of the Central District of California, as its United States location, from which it conducts business.  The Defendants operate collectively as a single enterprise, and thus are all subject to personal jurisdiction.  Defendants have caused harm and committed unlawful acts hereinafter

complained of directed to and in this judicial district, because Defendants know Plaintiffs reside in this district and intentionally directed their wrongful acts against Plaintiffs. Moreover, Plaintiffs have suffered harm in this judicial district as a result of Defendants' conduct, and on information and belief Defendants know Plaintiffs have suffered harm in this judicial district. Defendants have also stated, under penalty of perjury, that their goods and use of marks, which are the subject of this action, are being sold in United States commerce. To the extent Defendants are not subject to personal jurisdiction based on specific contacts with, purposefully availing themselves of, and/or purposefully directing its contacts to California, then they are subject to personal jurisdiction in California and this judicial district pursuant to Federal Rule of Civil Procedure 4(k)(2), at least because Defendants have stated under penalty of perjury that they are using the marks that are the counterfeit marks at issue in this action in United States commerce.

9.     Venue is appropriate in this district in accordance with 28 U.S.C. § 1391(b) and (c).

## PLAINTIFFS' BACKGROUND AND BUSINESS

10.     Dr. Clarke opened a pediatric clinic in Santa Monica, California in about 1988. Dr. Clarke continues to treat children in his clinic to this day.

11.     Since as early as 1996, Dr. Clarke has been formulating nutritional and dietary supplements for children.

12.     Over 25 years ago, Dr. Clarke noticed a dramatic increase in the number of patients coming to him with illnesses like immune deficiencies, allergies, eczema, asthma, ADD, and autism, leading him to wonder "how do we keep our kids healthy?" He researched obsessively and came up with the solution — great tasting, easily absorbed supplements that may replace what is missing in children's diets in today's world.

13.     Dr. Clarke used extensive research from his pediatric practice and many medical modalities (Western Medicine, Homeopathy, Naturopathic Medicine, Nutritional Medicine & Herbal Medicine) to formulate ChildLife Essentials, the first complete line of premium nutritional supplements made especially for infants and children.

PLAINTIFFS' FIRST AMENDED COMPLAINT

14.    Dr. Clarke made sure only the highest quality, most pure, potent, and natural ingredients went into his formulas and had them meticulously tested by third-party labs to ensure they are the best nutritional supplements on the market for children—supplements Dr. Clarke felt great about giving to his own child, as well as to his patients.

15.    Dr. Clarke formulated his ChildLife Essentials supplements to offer all of the important vitamins, minerals, and anti-oxidants to give children the extra support and protection their developing minds and immune systems may require to function in a healthy way.

16.    Dr. Clarke founded Plaintiff Biozeal in 1997 to bring the benefits of his ChildLife Essentials supplements to children in the United States and around the world.

17.    For over twenty years, Biozeal has been, and is now, engaged in the business of overseeing the manufacture and distribution of the nutritional and dietary supplements specially formulated by Dr. Clarke ("Plaintiffs' Supplements").

## PLAINTIFFS' INTELLECTUAL PROPERTY

18.    Dr. Clarke is the registrant of the CHILDLIFE word trademark, U.S. Trademark Registration No. 2299035 in International Class 5, for "nutritional supplements in the nature of vitamin, mineral, herbal and homeopathic remedies" (the "CHILDLIFE Mark"). The CHILDLIFE word mark was registered in December 1999 and is in full force and effect. Dr. Clarke, including through Biozeal, has continuously used the CHILDLIFE Mark in United States commerce since at least March 1998. Attached hereto as **Exhibit A** is a copy of the registration certificate for the CHILDLIFE Mark. Attached hereto as **Exhibit B** is a copy of a specimen of use of the Dr. Clarke's CHILDLIFE Mark.

19.    Dr. Clarke is the registrant, on the supplemental register, of the NUTRITION FOR KIDS! word trademark, U.S. Trademark Registration No. 3697308 in International Class 5, for "Dietary and nutritional supplements" (the "NUTRITION FOR KIDS! Mark"). The NUTRITION FOR KIDS Mark was registered in October

2009 and is in full force and effect. Dr. Clarke, including through Biozeal, has continuously used the NUTRITION FOR KIDS! Mark in United States commerce since at least November 1998. Attached hereto as **<u>Exhibit C</u>** is a copy of the registration certificate for the NUTRITION FOR KIDS! Mark. Attached hereto as **<u>Exhibit D</u>** is a copy of a specimen for use of the NUTRITION FOR KIDS! Word Mark.

20.     Dr. Clarke is the registrant of the CHILDLIFE ESSENTIALS word trademark, U.S. Trademark Registration No. 4292453 in International Class 5, for "Dietary and nutritional supplements; Vitamin and mineral supplements" (the "CHILDLIFE ESSENTIALS Mark"). The CHILDLIFE ESSENTIALS Mark was registered in February 2013 and is in full force and effect. Dr. Clarke, including through Biozeal, has continuously used the CHILDLIFE ESSENTIALS Mark in United States commerce since at least 2000. Attached hereto as **<u>Exhibit E</u>** is a copy of the registration certificate for the CHILDLIFE ESSENTIALS Mark. Attached hereto as **<u>Exhibit F</u>** is a copy of a specimen for use of the CHILDLIFE ESSENTIALS Mark.

21.     Biozeal oversees the manufacturing of the nutritional supplements formulated by Dr. Clarke and trades under the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark. Biozeal causes to be marketed and sold in United States commerce various products incorporating the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark (collectively, "Plaintiffs' CHILDLIFE Products"), for example:



**PLAINTIFFS' FIRST AMENDED COMPLAINT**

22.    Plaintiffs prominently and extensively use the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark (sometimes referred to as "Plaintiffs' Marks") directly on Plaintiffs' CHILDLIFE Products.

23.    Plaintiffs have advertised and sold, and/or caused to be advertised and sold, Plaintiffs' CHILDLIFE Products under Plaintiffs' Marks throughout the United States, including in natural and conventional grocery stores (such as Whole Foods, Sprouts, Kroger, and Giant Eagle), supplement shops (such as GNC), and homeopathic pharmacies that sell into this judicial district.

24.    Plaintiffs' CHILDLIFE Products also have been marketed under Plaintiffs' Marks throughout the United States via the Internet, including through certain websites accessible at www.gnc.com, www.iherb.com, www.vitacost.com, www.walmart.com, and www.amazon.com.

25.    Plaintiffs also market Plaintiffs' CHILDLIFE Products under the Plaintiffs' Marks on social media platforms including on TikTok, Instagram, Facebook, and Pinterest.

26.    Plaintiffs have invested substantial resources in developing Plaintiffs' CHILDLIFE Products and having those goods advertised, promoted, and marketed under the Plaintiffs' Marks throughout the United States and establishing the Marks in the minds of consumers as the source of high-quality goods offered by Plaintiffs.

27.    Plaintiffs have been committed to making premium natural supplements with only top-quality, pure ingredients that are allergy-free, gluten-free, and GMO-free, and that never use artificial colors, sweeteners, flavors or fillers.

28.    Plaintiffs' CHILDLIFE Products are Kosher Parve Certified, Non-GMO Project Certified, NSF Good Manufacturing Practices (GMP) Registered, NSF Gluten-Free Certified, and Oregon Tilth Certified Organic.

29.    Plaintiffs give back, supporting children and their families who cannot afford vitamins and supplements, by donating to, among others, Autism Hope Alliance, Vitamin Angels, Create Now, and Illumination Foundation.

30.     As noted, Dr. Clarke and Biozeal have used the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark in commerce in connection with Plaintiffs' CHILDLIFE Products since at least March 1998, November 1998, and 2000, respectively.

31.     As a result of Plaintiffs' use of the marks as described above, and in addition the registered rights described above, Plaintiffs' Marks have each acquired strong secondary meaning, and also have garnered extremely strong common law trademark rights, embodying invaluable goodwill.

32.     The CHILDLIFE Mark and the CHILDLIFE ESSENTIALS Mark are inherently distinctive, and Plaintiffs' Marks have become favorably known among consumers as used in connection with Plaintiffs' CHILDLIFE Products. The Plaintiffs' Marks have each become an invaluable symbol of the source of Plaintiffs' CHILDLIFE Products and Plaintiffs' Supplements bearing those marks, of the high quality of the Supplements bearing those marks, and of the goodwill associated with the marks. As such, the CHILDLIFE Mark, the NUTRITION FOR KIDS Mark, and the CHILDLIFE ESSENTIALS Mark have accumulated and enjoy substantial secondary meaning and are each strong marks.

## DEFENDANTS' COUNTERFEITING AND OTHER WRONGFUL CONDUCT

33.     On information and belief, Defendants, operating as a single enterprise and alter egos of each other and/or as each other's agents, currently are, and at all relevant times have been, in the business of manufacturing and selling or otherwise using in commerce in the United States certain supplements in competition with Plaintiffs.

34.     On January 3, 2019, TNSG Health filed an application to register 童年时光, which TNSG Health claims is a Chinese character mark (U.S. Serial No. 88/248,354) (the "'354 Application"), for use in connection with "vitamin preparations; preparations of trace elements for human and animal use, namely, protein supplements; dietetic beverages adapted for medical purposes; dietetic substances adapted for medical use, namely, dietary fiber to aid digestion; mineral food supplements; nutritional

supplements; enzyme dietary supplements; protein dietary supplements" in International Class 5. The Chinese character mark that is the subject of the '354 Application identifies for consumers in (at least) the United States, China, Hong Kong, and Macau the source of Plaintiffs' Supplements.

35.    On November 18, 2019, TNSG Health filed a Statement of Use in the '354 Application, asserting that the mark was "first used in commerce at least as early as 07/01/2019," that the mark "is in use in commerce on or in connection with all of the goods/services," and that it was "submitting one specimen for the class showing the mark as used in commerce on or in connection with any item in the class, consisting of a(n) Photographs [sic] of the mark in use on the packaging of designated goods in commerce."

36.    The specimen of use submitted by TNSG Health together with its Statement of Use was a copy of Plaintiffs' product label, including Plaintiffs' Marks and trade name, that has been modified to include TNSG Health's alleged mark on the product ("TNSG Health's Infringing Chinese-character Product"). An image of a portion of the specimen submitted is as follows:



TNSG Health subsequently obtained a U.S. federal trademark Registration No. 5957363 for the mark that was the subject of the '354 Application (the "Chinese Character Mark"). Attached hereto as **<u>Exhibit G</u>** is a copy of TNSG Health's Statement of Use

14

along with its specimen for the '354 Application and with the registration that issued for that mark. On information and belief, TNSG Health and/or one or more of the other Defendants have sold in the United States at least one product as it is depicted in the specimen submitted with the '354 Application.

37.    Plaintiffs cannot determine from the image of the specimen of use whether TNSG Health has relabeled Plaintiffs' product, or whether TNSG Health has substituted its own product for Plaintiffs' product in the same way that TNSG Health has falsified its label and counterfeited Plaintiffs' names, trademarks, and labels. Under either scenario, TNSG Health—as part of a single enterprise with the other Defendants and as the agent of each of them—is using or has used in United States commerce infringing versions and counterfeits of the Plaintiffs' Marks in connection with TNSG Health's Infringing Chinese-character Product and Mark because among other reasons it is using marks identical with, or substantially indistinguishable from, the registered CHILDLIFE, NUTRITION FOR KIDS!, and CHILDLIFE ESSENTIALS Marks.

38.    TNSG Health has since surrendered its registration for the Chinese Character Mark.

39.    On February 12, 2019, TNSG Health filed an application to register the mark VITASPA (U.S. Serial No. 88/298,398) (the "'398 Application"), for use in connection with "vitamin preparations; preparations of trace elements for human and animal use, namely, protein supplements; dietetic beverages adapted for medical purposes; dietetic substances adapted for medical use, namely, dietary fiber to aid digestion; mineral food supplements; nutritional supplements; enzyme dietary supplements; protein dietary supplements" in International Class 5.

40.    On February 7, 2020, TNSG Health filed a Statement of Use in the '398 Application, asserting that its VITASPA mark was "first used in commerce at least as early as 10/10/2019," that the mark "is in use in commerce on or in connection with all of the goods/services," and that it was "submitting one specimen for the class showing the mark as used in commerce on or in connection with any item in the class, consisting

of a(n) Photographs [sic] of the mark in use on designated goods in commerce."

41.    The specimen of use submitted by TNSG Health together with its Statement of Use in the '398 Application was a copy of Plaintiffs' product label, including Plaintiffs' Marks, as well as Plaintiffs' address, telephone number, and domain name, that has been modified to include TNSG Health's alleged mark on the product. An image of a portion of the specimen is as follows:



Attached hereto as **<u>Exhibit H</u>** is a copy of TNSG Health's Statement of Use along with its specimen for the '398 Application and with the registration that issued for that mark. On information and belief, TNSG Health and/or one or more of the other Defendants have sold in the United States at least one product as it is depicted in the specimen submitted with the '398 Application.

42.    Plaintiffs cannot determine from the image of the specimen of use whether TNSG Health has relabeled Plaintiffs' product, or whether TNSG Health has substituted its own product for Plaintiffs' product in the same way that TNSG Health has falsified its label and counterfeited Plaintiffs' names, trademark, telephone number, and domain name. Under either scenario, TNSG Health—as part of a single enterprise with the other Defendants and as the agent of each of them—is using or has used in United States commerce infringing versions and counterfeits of Plaintiffs' Marks because among other reasons each of those marks as it appears on TNSG Health's specimen is identical with, or is substantially indistinguishable from, the registered CHILDLIFE, NUTRITION FOR KIDS, and CHILDLIFE ESSENTIALS Marks.

43.    TNSG Health has since surrendered its registration for the VITASPA Mark and, through a person purporting to speak on TNSG Health's behalf, has asserted in an unsworn statement, in contradiction to the sworn statement it submitted to the U.S. Patent and Trademark Office, that it has not used the mark.

44.    Although TNSG Health surrendered the VITASPA Mark (after it was discovered by Plaintiffs), on September 30, 2022, Alps Holding filed an application to register the mark VITASPA (U.S. Serial No. 97/613915) (the "'915 Application") for use in connection with "Albumin dietary supplements; Baby food; Bowel evacuant preparations; Calcium supplements; Cod liver oil; DHA algae oil dietary supplements; Dietary fiber to aid digestion; Dietary supplements consisting primarily of iron; Dietetic beverages adapted for medical purposes; Disinfectant wipes; Edible fish oils for medical purposes; Enzyme dietary supplements; Herbal supplements for sleeping problems; Linseed oil dietary supplements; Lutein dietary supplements; Medicines for alleviating constipation; Mineral food supplements; Natural remedy preparations for the treatment of gastro-intestinal conditions, hormonal and chemical imbalances, and sleep disorders; Natural sleep aid preparations; Nutritional supplements; Nutritional supplements consisting primarily of iron; Probiotic supplements; Propolis dietary supplements; Protein dietary supplements; Protein supplements; Royal jelly dietary supplements; Sleeping pills/tablets; Vitamin preparations; Zinc dietary supplements; Zinc supplement lozenges" in International Class 5.

45.    On May 20, 2023, Alps Holding—through Venable, LLP, which is TNSG Health's counsel of record in this action—expressly abandoned the '915 Application.

46.    On March 13, 2019, TNSG Health filed an application to register the mark iFLEX (U.S. Serial No. 88/338,705) (the "'705 Application")(the '354 Application, the '398 Application, and the '705 Application referred to collectively hereinafter as "TNSG Health's Applications"), for use in connection with "vitamin preparations; preparations of trace elements for human and animal use, namely, protein supplements; dietetic beverages adapted for medical purposes; dietetic substances adapted for medical use,

namely, dietary fiber to aid digestion; mineral food supplements; nutritional supplements; enzyme dietary supplements; protein dietary supplements" in International Class 5.

47.    On February 6, 2020, TNSG Health filed a Statement of Use in the '705 Application, asserting that its iFLEX mark was "first used in commerce at least as early as 04/30/2019," that the mark "is in use in commerce on or in connection with all of the goods/services," and that it was "submitting one specimen for the class showing the mark as used in commerce on or in connection with any item in the class, consisting of a(n) Photographs [sic] of the mark in use on designated goods in commerce."

48.    The specimen of use submitted by TNSG Health together with its Statement of Use was a copy of Plaintiffs' product label, including Plaintiffs' Marks, as well as Plaintiffs' address, telephone number, and domain name, that has been modified to include TNSG Health's alleged mark on the product. An image of a portion of the specimen is as follows:



Attached hereto as **<u>Exhibit I</u>** is a copy of TNSG Health's Statement of Use along with its specimen for the '705 Application and with the registration that issued for that mark. On information and belief, TNSG Health and/or one or more of the other Defendants have sold in the United States at least one product as it is depicted in the specimen submitted with the '705 Application.

49.    Plaintiffs cannot determine from the image of the specimen of use whether TNSG Health has relabeled Plaintiffs' product, or whether TNSG Health has substituted

its own product for Plaintiffs' product in the same way that TNSG Health has falsified its label and counterfeited Plaintiffs' trademark and domain name. Under either scenario, TNSG Health—as part of a single enterprise with the other Defendants and as the agent of each of them—is using or has used in United States commerce infringing versions and counterfeits of the registered CHILDLIFE mark because among other reasons its iFLEX product is sold with a mark that is identical with, or is substantially indistinguishable from, the CHILDLIFE registered mark.

50.    TNSG Health has since surrendered its registration for the iFLEX Mark and, through a person purporting to speak on behalf of TNSG Health, has asserted in an unsworn statement, in contradiction to the sworn statement it submitted to the U.S. Patent and Trademark Office, that it has not used the mark.

51.    Although TNSG Health surrendered its registration for the iFLEX Mark (after it was discovered by Plaintiffs), on September 30, 2022, Alps Holding filed an application to register the iFLEX mark, which was assigned U.S. Serial No. 97/613,924 (the "'924 Application"), for use in connection with "Albumin dietary supplements; Baby food; Bowel evacuant preparations; Calcium supplements; Cod liver oil; DHA algae oil dietary supplements; Dietary fiber to aid digestion; Dietary supplements consisting primarily of iron; Dietetic beverages adapted for medical purposes; Disinfectant wipes; Edible fish oils for medical purposes; Enzyme dietary supplements; Herbal supplements for sleeping problems; Linseed oil dietary supplements; Lutein dietary supplements; Medicines for alleviating constipation; Mineral food supplements; Natural remedy preparations for the treatment of gastro-intestinal conditions, hormonal and chemical imbalances, and sleep disorders; Natural sleep aid preparations; Nutritional supplements; Nutritional supplements consisting primarily of iron; Probiotic supplements; Propolis dietary supplements; Protein dietary supplements; Protein supplements; Royal jelly dietary supplements; Sleeping pills/tablets; Vitamin preparations; Zinc dietary supplements; Zinc supplement lozenges" in International Class 5.

52.     On May 20, 2023, Alps Holding—through Venable, LLP, which is TNSG Health's counsel of record in this action—expressly abandoned the '924 Application.

53.     On February 4, 2019, TNSG Health filed another application to register the 童年时光 mark, which was assigned U.S. Serial No. 88/287,905) (the "'905 Application"), for use in connection with "Administrative processing of purchase orders; Commercial information and advice for consumers in the choice of products and services; Import and export agencies; On-line advertising on a computer network; Outsourcing services; Providing business information via a web site; Provision of an on-line marketplace for buyers and sellers of goods and services; Purchasing and procurement services, namely, procuring of contracts for others for the purchase of goods and labor contracting services; Retail store services for pharmaceutical, veterinary and sanitary preparations and medical supplies; Sales promotion for others; Sponsorship search; Wholesale store services for pharmaceutical, veterinary and sanitary preparations and medical supplies" in International Class 35.  The Chinese character mark that is the subject of the '905 Application identifies for consumers in (at least) the United States, China, Hong Kong, and Macau the source of Plaintiffs' Supplements.

54.     To confuse the public into believing that there is a relationship between TNSG Health's Infringing Chinese-character Product and TNSG Health's website, on the one hand, with Plaintiff and/or Plaintiffs' Products, on the other hand, TNSG Health has submitted to the USPTO a specimen of use for the '905 Application that shows TNSG Health's purported website prominently displaying several of Plaintiffs' CHILDLIFE Products on several pages, as well as a banner advertisement for them. Attached hereto as **Exhibit J** is a copy of the specimen of use that TNSG Health submitted with the '905 Application.

55.     To further confuse the public into believing that there is a relationship between TNSG Health's Infringing Chinese-character Product and website and Plaintiffs, TNSG Health's website (as depicted in its specimen of use of **Exhibit J**) states that TNSG Health "cooperates with several well-known supplement brands, including…

[Plaintiff] Childlife Essentials….” Plaintiff Biozeal, t/a Childlife Essentials, does not "cooperate" with Defendant TNSG Health Co., Ltd.

56.    The goods offered by TNSG Health on its purported retail website provided as a specimen for the '905 Application are not just related to Plaintiff's CHILDLIFE® products, some of them appear to be identical.

57.    TNSG Health's webpage specimen of use for the '905 Application does not appear to be available anywhere on the Internet, or on the Internet Archive. The webpage specimen of use for the '905 Application was available at one time and TNSG Health and/or one or more of the other Defendants have sold in the United States at least one product as depicted in the specimen submitted with the '905 Application.

58.    TNSG Health has since surrendered its registration for the Chinese Character Mark.

59.    On August 1, 2019, Alps Holding filed an application to register the mark IRONBABY (U.S. Serial No. 88/559,633) (the "'633 Application"), for use in connection with "Dietary supplements consisting primarily of iron; Dietetic beverages adapted for medical purposes; Dietetic foods adapted for medical purposes; Food for babies; Medicated supplements for foodstuffs for babies; Mineral food supplements; Nutritional supplements; Nutritional supplements consisting primarily of iron" in International Class 5.

60.    On February 7, 2020, Alps Holding filed a Statement of Use in the '633 Application, asserting that its IRONBABY mark was "first used in commerce at least as early as 10/20/2019," that the mark "is in use in commerce on or in connection with all of the goods/services," and that it was "submitting one specimen for the class showing the mark as used in commerce on or in connection with any item in the class, consisting of a(n) Photographs [sic] of the mark in use on designated goods in commerce."

61.    The specimen of use submitted by Alps Holding together with its Statement of Use in the '633 Application was a copy of Plaintiffs' product label, including Plaintiffs' Marks, as well as Plaintiffs' address, telephone number, and domain name,

that has been modified to include Alps Holding's alleged mark on the product. An image of a portion of the specimen is as follows:



Attached hereto as **<u>Exhibit K</u>** is a copy of Alps Holding's Statement of Use along with its specimen for the '633 Application and with the registration that issued for that mark. On information and belief, Alps Holding and/or one or more of the other Defendants have sold in the United States at least one product as it is depicted in the specimen submitted with the '633 Application.

62.    Plaintiffs cannot determine from the image of the specimen of use whether Alps Holding has relabeled Plaintiffs' product, or whether Alps Holding has substituted its own product for Plaintiffs' product in the same way that TNSG Health has falsified its label and counterfeited Plaintiffs' names, trademark, telephone number, and domain name. Under either scenario, Alps Holding—as part of a single enterprise with the other Defendants and as the agent of each of them—is using or has used in United States commerce infringing versions and counterfeits of Plaintiffs' Marks because among other reasons each of those marks as it appears on Alps Holding's specimen is identical with, or is substantially indistinguishable from, the registered CHILDLIFE, NUTRITION FOR KIDS, and CHILDLIFE ESSENTIALS Marks.

63.    On May 20, 2023, Alps Holding—through Venable LLP, which is TNSG Health's counsel of record in this action—surrendered its registration for the

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

IRONBABY Mark.

64.     On August 8, 2019, Alps Holding filed an application to register the mark iCAN (U.S. Serial No. 88/571,630) (the "'630 Application"), for use in connection with "Dietetic beverages adapted for medical purposes; Dietetic foods adapted for medical purposes; Food for babies; Medicated supplements for foodstuffs for babies; Mineral food supplements; Nutritional supplements; Nutritional supplements, namely, probiotic compositions; Pharmaceutical preparations for the treatment of musculo-skeletal disorders; Probiotic preparations for medical use; Probiotic supplements; Vitamin preparations; Vitamin supplement patches" in International Class 5.

65.     On April 27, 2020, Alps Holding filed a Statement of Use in the '633 Application, asserting that its iCAN mark was "first used in commerce at least as early as 3/1/2020," that the mark "is in use in commerce on or in connection with all of the goods/services," and that it was "submitting one specimen for the class showing the mark as used in commerce on or in connection with any item in the class, consisting of a(n) Photographs [sic] of the mark in use on designated goods in commerce."

66.     The specimen of use submitted by Alps Holding together with its Statement of Use in the '630 Application was a copy of Plaintiffs' product label, including Plaintiffs' Marks, as well as Plaintiffs' address, telephone number, and domain name, that has been modified to include Alps Holding's alleged mark on the product. An image of a portion of the specimen is as follows:



**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Attached hereto as **Exhibit L** is a copy of Alps Holding's Statement of Use along with its specimen for the '630 Application and with the registration that issued for that mark. On information and belief, TNSG Health and/or one or more of the other Defendants have sold in the United States at least one product as it is depicted in the specimen submitted with the '630 Application.

67.    Plaintiffs cannot determine from the image of the specimen of use whether Alps Holding has relabeled Plaintiffs' product, or whether Alps Holding has substituted its own product for Plaintiffs' product in the same way that TNSG Health has falsified its label and counterfeited Plaintiffs' names, trademark, telephone number, and domain name. Under either scenario, Alps Holding—as part of a single enterprise with the other Defendants and as the agent of each of them—is using or has used in United States commerce infringing versions and counterfeits of Plaintiffs' Marks because among other reasons each of those marks as it appears on Alps Holding's specimen is identical with, or is substantially indistinguishable from, the registered CHILDLIFE Mark.

68.    On May 30, 2023, Alps Holding—through Venable LLP, which is TNSG Health's counsel of record in this action—surrendered its registration for the iCAN Mark.

69.    Alps Holding has applied to register many of the trademarks that TNSG Health previously owned but abandoned in connection with this litigation.

70.    Plaintiffs have not provided to TNSG Health, Alps Holding, or any of the other Defendants permission to use any of the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark. Defendants' use of the Plaintiffs' Marks is made without Plaintiffs' authority and has begun well after Plaintiffs have obtained rights (and registrations) in the Plaintiffs' Marks.

71.    On information and belief, Defendants are using and/or have used in United States commerce marks on products, including TNSG Health's Infringing Chinese-character Product and products depicted in the VITASPA, iFLEX, and Iron Baby specimens of use and Alps Holdings' products depicted in the IRON BABY and iCAN

specimens of use (collectively, "Defendants' Infringing Products") that are identical, nearly identical, and/or closely related to Plaintiffs' CHILDLIFE Products that Plaintiffs marketed and sold, and that Plaintiffs continue to market and sell under the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark well-prior to Defendants' claimed use in United States commerce.

72.    On information and belief, Defendants sold, distributed, or transported in United States commerce Defendants' Infringing Products—and potentially other products which incorporate the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark, in trade channels that are the same as Plaintiffs', or that are highly similar thereto, and to classes of consumers that are identical to or that overlap with Plaintiffs' consumers.

73.    Defendants' conduct has been in bad faith and with a specific intent to counterfeit, infringe, and trade off the goodwill of the CHILDLIFE Mark, the NUTRITION FOR KIDS Mark, and the CHILDLIFE ESSENTIALS Mark and Plaintiffs' goodwill in general; Defendants' conduct is exceptional under the Lanham Act. Defendants' use of Plaintiffs' Marks was undoubtedly done with knowledge of Plaintiffs' rights in those marks—as Plaintiffs' marks appear on Defendants' counterfeit labels along with the ® symbol reflecting *Plaintiff Dr. Clarke's* registrations. Defendants can have no plausible explanation for selling or otherwise using in United States commerce its competing products with those marks.

74.    Upon information and belief, Defendants have used the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark with actual and constructive knowledge of Plaintiffs' ownership and control of those marks and with a deliberate and bad faith intent to capitalize on Plaintiffs' reputation and goodwill, to confuse and deceive consumers, and to unfairly compete with Plaintiffs. Accordingly, Defendants have been acting in bad faith in connection with their sale or other use in United States commerce of those competing products.

75.    Upon information and belief, Defendants' use of Plaintiffs' Marks in

connection with the sale and marketing or other use in United States commerce of Defendants' Infringing Products, including in California in this Judicial District, has caused, and is likely to cause, confusion, mistake, and deception among the relevant purchasing public. Consumers and the trade will likely believe that Defendants' Infringing Products are associated with, or connected with, or approved or authorized by Plaintiffs, or that Defendants' Infringing Products originate from and are controlled by the same source as Plaintiffs' products, when that is not the case.

76.    Consumers and the trade will likely believe that Defendants' Infringing Products, and sale and marketing thereof, including but not limited to Defendants' Infringing Chinese-character Product, and the VITASPA, iFLEX, IRON BABY, and iCAN products, are associated with, or connected with, or approved or authorized by Plaintiffs, or that Defendants' Infringing Products originate from the same source as Plaintiffs' products, when that is not the case.

77.    Any such confusion would result in injury and have a direct impact on Plaintiffs' reputation and its ability to market its own products and services under Plaintiffs' Marks.

78.    In addition, any defect, objection, or fault found with Defendants' Infringing Products would negatively impact and seriously injure the reputation and goodwill Plaintiffs have established for themselves, as well as for the goods and services they offer under the Plaintiffs' Marks.

79.    All of the foregoing acts of Defendants have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury and damage for which Plaintiffs have no adequate remedy at law. Defendants have knowingly and willfully used and continues to use the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark in connection with the advertisement, distribution, offering for sale, and sale or other use in United States commerce of Defendants' Infringing Products with an intent to capitalize on the reputation and goodwill of Plaintiffs and the marks set forth above, to confuse and

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

deceive consumers, and to unfairly compete with Plaintiffs. Unless Defendants are enjoined from such conduct, Plaintiffs will be severely inhibited in their ability to ensure that the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark continue to be the exclusive source of Plaintiffs' products to which they are affixed. In addition, Plaintiffs have suffered and will continue to suffer loss as a result of their having to engage in corrective advertising and other remedial measures to remedy reputational harm that has occurred due to Defendants' conduct as alleged herein.

## FIRST CLAIM FOR RELIEF
## INFRINGEMENT AND COUNTERFEITING OF *CHILDLIFE* (LANHAM ACT: 15 U.S.C. § 1114, BY PLAINTIFF CLARKE AGAINST ALL DEFENDANTS)

80.     Plaintiff repeats the allegations set forth above in Paragraphs 1 through 79 as though fully set forth herein in this paragraph.

81.     As alleged herein, Defendants have used a spurious mark, which is identical to and/or substantially indistinguishable from, and is confusingly similar to, Dr. Clarke's CHILDLIFE Mark, as that mark is registered under U.S. Registration No. 2299035. Defendant has counterfeited and infringed, and continues to counterfeit and/or infringe, the CHILDLIFE Mark in violation of 15 U.S.C. § 1114.

82.     Defendants have used and/or are using, in interstate commerce, without the consent of Plaintiffs, the CHILDLIFE Mark or a mark that is identical to and/or substantially indistinguishable from, and is a colorable imitation thereof, and which is confusingly similar to the prior federally registered CHILDLIFE Mark. Specifically, Defendants have used the CHILDLIFE Mark in connection with Defendants' Infringing Chinese-character Product and VITASPA, iFLEX, IRON BABY, and iCAN products, which are identical and/or highly related to the products that Plaintiffs sell under the Registered CHILDLIFE Mark. As shown on the second page of Defendants' specimen for the Infringing Chinese-character Product (**Exhibit G**), Defendants have placed the

manipulated and falsified label with the Chinese Character Mark over what appears to be a label with Plaintiff's CHILDLIFE Mark. Defendants also have placed the manipulated and falsified label with the IRON BABY mark on what appears to be a label with Plaintiff's CHILDLIFE Mark. Further, to the extent Defendants' sworn statements of use submitted to the U.S. Patent and Trademark Office for its VITASPA and iFLEX Marks are true notwithstanding Defendants' subsequent suggestion that they have not sold products under those latter two marks, Defendants also used the CHILDLIFE Mark with those products in a similar manner. Such use by Defendants have caused, is intended to cause, and is likely to continue to cause confusion, mistake, and/or deception among the general consuming public as to the affiliation, connection, or association of Defendants and/or of Defendants' Infringing Products with Plaintiffs and/or Plaintiffs' CHILDLIFE Products, and/or as to the origin, sponsorship, or approval of Defendants' Products.

83.    Defendants' unauthorized use of the CHILDLIFE Mark in connection with Defendants' Products is intended to, and will, divert to Defendants the benefit of the reputation and goodwill symbolized by Plaintiff's Registered CHILDLIFE Mark, which belong exclusively to Plaintiff.

84.    Defendants' acts with respect to Defendants' Infringing Chinese-character Product and IRON BABY and iCAN Products, and on information and belief the VITASPA and iFLEX products, constitute counterfeiting and infringement of Plaintiff's Registered CHILDLIFE Mark under 15 U.S.C. § 1114(1).

85.    Defendants have acted with knowledge of Plaintiff's prior rights in the CHILDLIFE Mark and with the specific, willful, and deliberate intent to unfairly and improperly benefit from the secondary meaning, goodwill, and reputation symbolized by that mark.

86.    Upon information and belief, by its actions—including willfully and deliberately counterfeiting and copying Plaintiff's trademarks and other aspects of their labeling, Defendants intend to continue their unlawful conduct, and to intentionally

counterfeit and infringe the CHILDLIFE Mark unless enjoined by this Court.

87.    As a result of Defendants' acts of counterfeiting and trademark infringement, Plaintiff and the public are suffering irreparable harm for which there is no remedy at law such that Plaintiff is entitled to injunctive relief. Plaintiff also is entitled to recover damages for the costs of corrective advertising and other remedial measures, Defendants' profits, statutory damages per type of goods, and enhanced profits and damages and reasonable attorneys' fees because Defendants' conduct is exceptional, and constitutes intentional use of a counterfeit mark. 15 U.S.C. §§ 1114, 1116, and 1117.

## SECOND CLAIM FOR RELIEF

## INFRINGEMENT AND COUNTERFEITING OF *CHILDLIFE ESSENTIALS* (LANHAM ACT: 15 U.S.C. § 1114, BY PLAINTIFF CLARKE AND AGAINST ALL DEFENDANTS)

88.    Plaintiff repeats the allegations set forth above in Paragraphs 1 through 87 as though fully set forth herein in this paragraph.

89.    As alleged herein, Defendants have used a spurious mark, which is identical to and/or substantially indistinguishable from, and is confusingly similar to, Dr. Clarke's CHILDLIFE ESSENTIALS Mark, as that mark is registered under U.S. Registration No. 4292453. Defendants have counterfeited and infringed, and continue to counterfeit and infringe, the CHILDLIFE ESSENTIALS Mark in violation of 15 U.S.C. § 1114.

90.    Defendants have used and are using, in interstate commerce, without the consent of Plaintiffs, the CHILDLIFE ESSENTIALS Mark or a mark that is identical to and/or substantially indistinguishable from, and is a colorable imitation thereof, and which is confusingly similar to the prior federally registered CHILDLIFE ESSENTIALS Mark. Specifically, Defendants have used the CHILDLIFE ESSENTIALS Mark in connection with Defendants' Infringing Chinese-character Product, which is identical and/or highly related to the products that Plaintiffs sell under the Registered CHILDLIFE ESSENTIALS Mark. As shown on the second page of Defendants' specimen for the

Infringing Chinese-character Product (**Exhibit G**), Defendants have placed their manipulated label with the Chinese character mark over what appears to be a label with Plaintiff's CHILDLIFE ESSENTIALS Mark. Defendants also have placed the manipulated and falsified label with the IRON BABY mark on what appears to be a label with Plaintiff's CHILDLIFE Essentials Mark. Further, to the extent Defendants' sworn statements of use submitted to the U.S. Patent and Trademark Office for its VITASPA product are true notwithstanding Defendants' subsequent suggestion that they have not sold products under that latter mark, Defendants also used the CHILDLIFE ESSENTIALS Mark with that product in a similar manner. Such use by Defendants have caused, is intended to cause, and is likely to continue to cause confusion, mistake, and/ or deception among the general consuming public as to the affiliation, connection, or association of Defendants and/or of Defendants' Infringing Products, with Plaintiffs and/or Plaintiffs' CHILDLIFE ESSENTIALS Products, and/or as to the origin, sponsorship, or approval of Defendants' Infringing Products.

91.    Defendants' unauthorized use of the CHILDLIFE ESSENTIALS Mark in connection with Defendants' Infringing Products is intended to, and will, divert to Defendant the benefit of the reputation and goodwill symbolized by Plaintiff's Registered CHILDLIFE ESSENTIALS Mark, which belong exclusively to Plaintiff.

92.    Defendants' acts with respect to Defendants' Infringing Chinese-character Product and Iron Baby Product, and on information and belief the VitaSpa product, constitute counterfeiting and infringement of Plaintiff's Registered CHILDLIFE ESSENTIALS Mark under 15 U.S.C. § 1114(1).

93.    Defendants have acted with knowledge of Plaintiff's prior rights in the CHILDLIFE ESSENTIALS Mark and with the specific, willful, and deliberate intent to unfairly and improperly benefit from the secondary meaning, goodwill, and reputation symbolized by that mark.

94.    Upon information and belief, by its actions—including willfully and deliberately counterfeiting and copying Plaintiff's trademarks and other aspects of their

labeling, Defendants intend to continue their unlawful conduct, and to intentionally counterfeit and infringe the CHILDLIFE ESSENTIALS Mark unless enjoined by this Court.

95.     As a result of Defendants' acts of counterfeiting and trademark infringement, Plaintiff and the public are suffering irreparable harm for which there is no remedy at law such that Plaintiff is entitled to injunctive relief. Plaintiff also is entitled to recover damages for the costs of corrective advertising and other remedial measures, Defendants' profits, statutory damages per type of goods, and enhanced profits and reasonable attorneys' fees because Defendants' conduct is exceptional, and constitutes intentional use of a counterfeit mark. 15 U.S.C. §§ 1114, 1116, and 1117.

### THIRD CLAIM FOR RELIEF
### FALSE DESIGNATION OF ORIGIN AND FEDERAL UNFAIR COMPETITION
### (LANHAM ACT: 15 U.S.C. § 1125 (A) BY PLAINTIFFS AND AGAINST ALL
### DEFENDANTS)

96.     Plaintiffs repeat the allegations set forth in each paragraph above as though fully set forth herein in this paragraph.

97.     By making unauthorized use in interstate commerce of the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark, as set forth herein, Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants and/or Defendants' Infringing Products with Plaintiffs or Plaintiffs' Products, and/or as to the origin, sponsorship, or approval of Defendants' Infringing Products. Specifically, Defendants' use of the CHILDLIFE, NUTRITION FOR KIDS!, and CHILDLIFE ESSENTIALS Marks, as reflected in Defendants' specimens for Defendants' Infringing Chinese-character Product, and the VITASPA, iFLEX, IRON BABY, and iCAN Products as set forth above, falsely suggest an association, sponsorship, approval, or relationship between Defendants and/or their products and Plaintiffs and/or Plaintiffs' products. Defendants' false claim in its website specimen of use for the '905 Application that it

"cooperates" with Plaintiff Biozeal also falsely associates Defendants' Infringing Products and services with Plaintiff's registered Marks and with Plaintiffs, to the damage and detriment of Plaintiffs.

98.    Defendants' acts constitute willful and intentional false designation of origin and false association under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

99.    As a result of Defendants' acts of false designation of origin, Plaintiffs and the public are suffering irreparable harm for which there is no remedy at law such that Plaintiffs are entitled to injunctive relief. Plaintiffs also are entitled to recover damages for the costs of corrective advertising and other remedial measures, Defendants' profits, enhanced profits, costs, and reasonable attorneys' fees. 15 U.S.C. §§ 1125, 1116, and 1117.

<u>FOURTH CLAIM FOR RELIEF</u>

<u>TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION</u>

<u>(CALIFORNIA COMMON LAW BY PLAINTIFFS AND AGAINST ALL</u>

<u>DEFENDANTS)</u>

100.    Plaintiffs repeat the allegations set forth in each paragraph above as though fully set forth herein in this paragraph.

101.    Plaintiffs are the owner and authorized users of the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark, with the right to enforce rights in such marks. Plaintiffs began using such Marks in California prior to Defendants' use of the identical, substantially indistinguishable, and/or confusingly similar marks on Defendants' Infringing Products. Defendants are not authorized to use the Plaintiffs' Marks, or any mark confusingly similar to such Marks, or any mark that is likely to cause confusion, mistake, and deception among the relevant purchasing public in such a way that consumers are likely believe that Defendants' Infringing Products are associated with, or connected with, or approved or authorized by Plaintiffs or Plaintiffs' products, or that Defendants' Infringing Products originate from the same source as Plaintiffs' Products.

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

102.   Defendants' use of Plaintiffs' Marks in connection with Defendants' Infringing Products without Plaintiffs' permission constitutes unauthorized reproduction, counterfeiting, copying, or colorable imitations of Plaintiffs' Marks, and constitutes unfair competition.

103.   Without Plaintiffs' consent or authorization, Defendants have used Plaintiffs' Marks in connection with the sale, provision, distribution, offering for sale, and advertising or other use in United States commerce of Defendants' Infringing Products in California in a manner likely to cause confusion or mistake, or to deceive as to the source of Defendants' Products.

104.   Defendants engaged in the unauthorized use of Plaintiffs' Marks with knowledge and intent to create confusion or mistake, or to deceive, as to the source of the Defendants' Infringing Products.

105.   Defendants' actions have caused, and unless enjoined will continue to cause, substantial and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including but not limited to substantial and irreparable injury to the goodwill and reputation associated with the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark.  Plaintiffs also are entitled to recover damages for the costs of corrective advertising and other remedial measures, and Defendants' profits.

## FIFTH CLAIM FOR RELIEF
## CALIFORNIA UNFAIR COMPETITION
## (CALIFORNIA BUS. & PROF. CODE § 17200 *et seq.* BY PLAINTIFFS AND AGAINST ALL DEFENDANTS)

106.   Plaintiffs repeat the allegations set forth in each paragraph above as though fully set forth herein in this paragraph.

107.   Plaintiffs are informed and believe, and on that ground allege, that Defendants have intentionally and without Plaintiffs' consent adopted Plaintiffs' CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE

ESSENTIALS Mark with the intent of causing confusion, mistake, and deception as to the source of Defendants' Infringing Products with the intent to palm off Defendants' Infringing Products as those of Plaintiffs, and as such, has committed unfair competition in violation of California law. Defendants' acts are unlawful, unfair, and fraudulent in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*.

108.   The foregoing acts of the Defendants have caused and will continue to cause injury to Plaintiffs by depriving Plaintiffs of sales of their genuine goods, injuring their business reputation, and by passing off Defendants' Infringing Products as Plaintiffs' products, all in violation of the law of the State of California.

109.   Defendants' acts have caused and will continue to cause irreparable harm and damage to Plaintiffs, and have caused and will continue to cause Plaintiffs monetary damage in an amount thus far not determined, for which Plaintiffs are entitled to Defendants' profits, attorneys' fees, and costs.

110.   Defendants' acts of unfair competition have resulted in unjust enrichment to Defendants, and have caused and will continue to cause, unless enjoined by this Court, substantial and irreparable damage and injury to Plaintiffs and the public, for which damage and injury Plaintiffs have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
## CANCELLATION OF DEFENDANT'S U.S. REG. NO. 5957363
## (15 U.S.C. § 1119 BY PLAINTIFFS)

111.   Plaintiffs repeat the allegations set forth in each paragraph above as though fully set forth herein in this paragraph.

112.   Defendant TNSG Health obtained a registration for the Chinese character mark 童年时光 ("童年时光 Mark") under U.S. Registration No. 5957363, which issued on January 7, 2020.

113.   Plaintiff Dr. Clarke is the registrant of the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark, all three of which appear on the specimen of use for the 童年时光 Mark of Defendant TNSG Health's

U.S. Trademark Registration No. 5957363 (Exhibit G). The product depicted in the specimen is either a counterfeit of or a mislabeling of a product solely and exclusively manufactured for and at the direction of Plaintiff Biozeal. Defendant TNSG Health's continued registration of the alleged mark of Defendant's U.S. Registration No. 5957363 falsely associates Defendant TNSG Health's product and services with Plaintiff Dr. Clarke's registered mark and with Plaintiffs, to the damage and detriment of Plaintiffs.

114. Pursuant to Section 1119 of the Lanham Act, 15 U.S.C. § 1119, in any action involving a registered mark, the court may determine the right to registration and order the cancellation of a registration, in whole or in part. Defendant TNSG Health is not entitled to registration of the 童年时光 Mark, U.S. Trademark Registration No. 5957363, which is likely to cause confusion, mistake, or deception with respect to Plaintiffs' CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark. Therefore, Plaintiffs were entitled to an order as such that U.S. Trademark Registration No. 5957363 be cancelled. On information and belief, TNSG Health surrendered the 童年时光 Mark for cancellation as a result of Plaintiffs' claims in this lawsuit, and thus Plaintiffs should be deemed the prevailing party on this claim.

## SEVENTH CLAIM FOR RELIEF

## CANCELLATION OF DEFENDANT'S U.S. REG. NO. 6030381

## (15 U.S.C. § 1119 BY PLAINTIFFS)

115. Plaintiffs repeat the allegations set forth in each paragraph above as though fully set forth herein in this paragraph.

116. Defendant obtained a registration for the Chinese character mark 童年时光 under U.S. Registration No. 6030381, which issued on April 7, 2020.

117. Because Defendant is using the mark in commerce on product(s) bearing a label with counterfeits of Plaintiffs' Marks, Defendant's registration and use of the identical 童年时光 Mark for the retail sale of, *inter alia*, Plaintiffs' products bearing the label that Defendant counterfeited, is likely to create a false association with Plaintiffs, all to the damage of Plaintiffs.

118.   The likelihood of false association is increased because Defendant has falsely claimed on its website (**Exhibit J**) that Defendant "cooperates" with Plaintiff Biozeal.

119.   Pursuant to Section 1119 of the Lanham Act, 15 U.S.C. § 1119, in any action involving a registered mark, the court may determine the right to registration and order the cancellation of a registration, in whole or in part. Defendant is not entitled to registration of the 童年时光 Mark, U.S. Trademark Reg. No. 6030381, which is likely to cause confusion, mistake, or deception with respect to Plaintiffs' CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and the CHILDLIFE ESSENTIALS Mark. Therefore, Plaintiffs were entitled to an order as such that U.S. Trademark Reg. No. 6030381 be cancelled.  On information and belief, TNSG Health surrendered the 童年时光 Mark for cancellation as a result of Plaintiffs' claims in this lawsuit, and thus Plaintiffs should be deemed the prevailing party on this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter judgment finding, concluding, and declaring:

A.   That Defendants' use of its labeling on Defendants' Chinese-character Product, the VITASPA product, the iFLEX product, the IRON BABY product, and the iCAN Product ("Defendants' Infringing Products") constitutes trademark counterfeiting and infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), and trademark infringement and unfair competition under California law;

B.   That Defendants and each of their owners, parent companies, subsidiary companies, related companies, successors, assigns, officers, directors, agents, employees, and attorneys, and all persons or entities in active concert, participation, or privity with any of them, be permanently enjoined, pursuant to 15 U.S.C. § 1116 and applicable state laws, from:

1.   Selling, advertising, distributing, displaying, or otherwise using in United States commerce the Defendants' Infringing Products as they are depicted

in the specimens submitted to the USPTO as set forth in Exhibits G, H, I, K, and L hereto, and all other products in all formative variations that in any manner display any names, marks, or slogans, that include or bear, or are likely to cause confusion, mistake, or deception with, Plaintiffs' CHILDLIFE Mark, NUTRITION FOR KIDS! Mark, and CHILDLIFE ESSENTIALS Mark;

2.    Doing any other act or thing likely to induce the mistaken belief that any of the Defendants or Defendants' Infringing Products are in any way affiliated, connected, or associated with Plaintiffs or their goods and services, and doing any other act or thing likely to cause confusion with the CHILDLIFE Mark, the NUTRITION FOR KIDS! Mark, and/or the CHILDLIFE ESSENTIALS Mark;

3.    Trading on the goodwill associated with Plaintiffs' CHILDLIFE Mark, NUTRITION FOR KIDS! Mark, and/or CHILDLIFE ESSENTIALS Mark and passing off their goods as those of or authorized by Plaintiffs;

4.    Injuring Plaintiffs' business reputation and the goodwill associated with Plaintiffs' CHILDLIFE Mark, NUTRITION FOR KIDS! Mark, and/or CHILDLIFE ESSENTIALS Mark and from otherwise unfairly competing with Plaintiffs in any manner whatsoever; and

5.    Marketing, rendering, selling, or transporting any goods or services that bear any images, symbols, or trademarks that bear or are confusingly similar to Plaintiffs' CHILDLIFE Mark, NUTRITION FOR KIDS! Mark, and/or CHILDLIFE ESSENTIALS Mark, including but not limited to displaying promotional and marketing materials on outlets such as websites, social media platforms, and other sources available over the Internet.

C.    That, pursuant to 15 U.S.C. § 1118, Defendants be ordered to deliver up for destruction all tangible goods and materials, including but not limited to all products as

they are depicted in the specimens submitted to the USPTO, and all labels, packaging, brochures, advertisements, literature, promotions, displays, catalogs, and all other matter in the custody or under the control of Defendants bearing and/or displaying any of the CHILDLIFE, NUTRITION FOR KIDS!, and CHILDLIFE ESSENTIALS Marks or any confusingly similar packaging or marks;

D.    That, pursuant to 15 U.S.C. § 1116, Defendants be directed to file with this Court and to serve on Plaintiffs, within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

E.    That Defendants be directed to provide a complete accounting to Plaintiffs for any and all profits realized from the sale of products that incorporate any of the CHILDLIFE Mark, NUTRITION FOR KIDS! Mark, or CHILDLIFE ESSENTIALS Mark or any marks confusingly similar, from inception up through the date of the judgment;

F.    That Plaintiff Dr. Clarke be awarded statutory damages of $2,000,000 per instance of counterfeiting pursuant to the Lanham Act, 15 U.S.C. § 1117, or alternatively ordering Defendants to pay to Plaintiffs damages for the costs of corrective advertising and other remedial measures and all profits realized by Defendants' acts. Further, that Plaintiffs be awarded Defendants' profits, in an amount to be determined at trial;

G.    That Defendants be ordered to pay to Plaintiffs treble damages pursuant to 15 U.S.C. § 1117 for its knowing, intentional, and willful violations of federal law;

H.    That, in light of Defendant TNSG Health's surrender of U.S. Trademark Registration No. 5957363 for cancellation as a result of Plaintiffs' claims in this action, that Plaintiffs be deemed the prevailing party on its claim for cancellation of U.S. Trademark Registration No. 5957363;

I.    That, in light of Defendant TNSG Health's surrender of U.S. Trademark Registration No. 6030381 for cancellation as a result of Plaintiffs' claims in this action, that Plaintiffs be deemed the prevailing party on its claim for cancellation of U.S.

Trademark Registration No. 6030381;

J.    That Plaintiffs be awarded all reasonable attorneys' fees, costs, and disbursements incurred by Plaintiffs as a result of this action, pursuant to 15 U.S.C. § 1117(a);

K.    That Plaintiffs be awarded all damages available under California law; and

L.    That Plaintiffs be awarded any such other and further relief as this Court deems just and proper.

Dated:  October 18, 2023               **BARNES & THORNBURG LLP**


By:  */s/ Roya Rahmanpour*
          Seth A. Gold
          Jonathan J. Boustani
          Roya Rahmanpour

**KIRKLAND & ELLIS LLP**

          Mark C. Holscher
          Diana M. Torres
          Jiaxiao Zhang

          Attorneys for Plaintiffs
          Murray Colin Clarke and Biozeal, LLC

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

## JURY DEMAND

Plaintiffs Murray Colin Clarke and Biozeal, LLC hereby demand a trial by jury on all matters decidable by a jury.

Dated:  October 18, 2023                 **BARNES & THORNBURG LLP**


By: */s/ Roya Rahmanpour*
    Seth A. Gold
    Jonathan J. Boustani
    Roya Rahmanpour

**KIRKLAND & ELLIS LLP**

    Mark C. Holscher
    Diana M. Torres
    Jiaxiao Zhang

    Attorney for Plaintiffs
    Murray Colin Clarke and Biozeal, LLC

**PLAINTIFFS' FIRST AMENDED COMPLAINT**